UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SOLVENT CHEMICAL COMPANY,
ICC INDUSTRIES, INC.,

                              Plaintiffs,

                    -vs-                                   01-CV-425C(SC)

E.I. DUPONT DE NEMOURS & COMPANY,

                              Defendant.

_____

APPEARANCES:    JAECKLE, FLEISCHMANN & MUGEL, LLP (DENNIS P. HARKAWIK,
                ESQ., and BRENDA J. JOYCE, ESQ., of Counsel), Buffalo, New
                York, for Solvent Chemical Company, Inc.

                COHEN & GRIGSBY (DANIEL M. DARRAGH, ESQ., of Counsel),
                Pittsburgh, Pennsylvania, for E.I. DuPont de Nemours & Company.


        In this action, plaintiffs Solvent Chemical Company, Inc. ("Solvent") and Solvent's

parent company, ICC Industries, Inc. ("ICC") (collectively, "Solvent") seek contribution

against defendant E.I. DuPont de Nemours & Company ("DuPont") pursuant to Section

113 of the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. § 9613, in connection with costs incurred in remediating

contamination at property located at 3163 Buffalo Avenue, Niagara Falls, New York, and

adjacent property owned by the Olin Corporation (referred to by the parties herein as the

"Olin Hot Spot").  Currently pending is DuPont's renewed motion for summary judgment

(Item 67) seeking rulings from the court with respect to the scope of contribution protection

contained in the Consent Decree which DuPont entered with the State of New York in April

1997, approved by this court on October 8, 1997.  Oral argument on DuPont's motion was heard by the court on September 13, 2004.

## BACKGROUND

The pertinent factual background has been set forth at length in several prior motions, decisions, and orders in this case and in *State of New York v. Solvent Chemical Co., Inc.*, No. 83-CV-1401(C), and is for the most part undisputed.  Briefly stated, the 3163 Buffalo Avenue Site functioned for many years as a chemical manufacturing and storage facility, starting in 1940 when DuPont built and operated a plant at the Site under a contract with the United States Chemical Warfare Service ("CWS") to manufacture a chemical known as impregnite.  The plant was shut down in late 1943.  It was reactivated in 1951 for impregnite production by the Occidental Chemical Corp. (formerly Hooker Electrochemical Company) during the Korean conflict, and was shut down again in 1953. In 1972, the City of Niagara Falls purchased the Site and sold it to Solvent.  From 1973 to 1977, Solvent manufactured chlorinated benzenes and other chemicals at the Site. Solvent eventually sold the property in 1978, and a number of companies have owned or operated the Site until the present day.

The 3163 Buffalo Avenue Site is adjacent to several other industrial facilities, bordered on the west by the Olin Corporation, and to the south and east by DuPont's manufacturing facility located at Buffalo Avenue and 26th Street in Niagara Falls ("the DuPont Facility").  In 1985, the State determined that the 3163 Buffalo Avenue Site was an inactive hazardous waste disposal site, and placed it on the Inactive Waste Disposal Site Registry as Site Number 932096.  At about the same time, the State also determined

that the DuPont Facility was an inactive hazardous waste disposal site, and separately listed it on the Inactive Waste Disposal Site Registry as Site Number 932013.

Meanwhile, in December 1983, the State commenced civil action No. 83-CV-1401(C) against Solvent and others (including DuPont and Olin), seeking recovery of response costs incurred in connection with the 3163 Buffalo Avenue Site pursuant to CERCLA Section 107(a) and the common law of public nuisance. In June 1986, Solvent commenced a third-party action in No. 83-CV-1401(C) against DuPont, Occidental, the United States, and the City of Niagara Falls, claiming that the chemical manufacturing operations conducted by the third-party defendants on the 3163 Buffalo Avenue Site had contributed to the Site's environmental condition. Solvent later impleaded additional third-party defendants in a series of amended third-party complaints (*see* Items 179, 390, 539, 746, 861 and 1148 in No. 83-CV-1401(C)).

In 1989, plaintiffs, the United States, DuPont, Occidental, and Mader Capital Corp., as potentially responsible parties, conducted a remedial investigation to define the nature and extent of contamination resulting from previous activities at the Site. An investigation report was submitted to the State in 1990, indicating significant contamination of groundwater and soils. The New York State Department of Environmental Conservation ("DEC") then conducted a Supplemental Remedial Investigation and Feasibility Study ("RI/FS") to evaluate various remedial alternatives, and on December 31, 1996 the DEC issued a Record of Decision ("ROD") containing a plan for the remedial action to be taken at the Site. Principal organic contaminants identified in the RI/FS and the ROD included benzene, chlorobenzene, three different dichlorobenzene isomers, and trichlorobenzene, all directly related to Solvent's chlorinated benzene manufacturing operations at the Site.

Inorganic contaminants included chromium, lead, manganese, mercury, and zinc (Item 69, Ex. E, pp. 10-13).  While the ROD indicated that "[n]umerous other organic contaminants were detected in site groundwater in lower concentrations . . ." (*id.* at pp. 10-11), the benzene and chlorinated benzene materials were clearly identified as the primary "contaminants of concern" in the overburden soils and groundwater, as well as in the various zones (zones "A" through "F") of bedrock groundwater (*see id.* at pp. 40-46, Tables 1-7).

The remedy selected for the Site includes the following components:

a.  Containment of contaminated soils by placement of a clean soil cover system.

b.  Control and collection of contaminated overburden groundwater through construction and operation of an overburden ("A-zone") collection system.

c.  Installation of a phased bedrock hydraulic control system, including pumping wells installed and operated within the bedrock "B-zone" and at the Olin Hot Spot to achieve hydraulic control over the highly contaminated groundwater in the overburden and upper fractured bedrock.

d.  Treatment of pumped groundwater either onsite or offsite.

e.  Implementation of a long-term monitoring program to evaluate the effectiveness of the implemented remedy.

f.  Deed restrictions limiting future use of the Site.

(*Id.* at pp. 22-23, 35-38; Item 69, ¶ 18).

On October 8, 1997, this court approved five separate Consent Decrees entered between the State and several of the parties identified as potentially responsible for response costs at the Site.[1]  Of particular concern to this litigation are the Consent Decrees which the State entered with DuPont (the "DuPont Decree")[2] and Solvent (the "Solvent Decree") with respect to the 3163 Buffalo Avenue Site.  The terms of the DuPont Decree provided that DuPont would pay the State $216,250.00 and the State would settle all of its claims against DuPont, as follows:

> [T]he State is settling all claims against [DuPont, Occidental, and the United States] for the Matters Addressed by this Consent Decree including all Response Costs, past and future, which have been incurred or will be incurred by the State, any local governmental entity, or any private entity, including any and all Response Costs incurred by any party to this action or by any other responsible party, for investigation and remediation as a result of the release or threatened release of Hazardous Substances at or from the Site.  The payments being made by the Settling Defendants represent the fair and reasonable contribution by the Settling Defendants of the total past Response Costs which have been incurred by the State and by any other party and the total anticipated future Response Costs which will be incurred by the State, any local governmental entity, or any private entity for the implementation of the remedial program set forth in the State's ROD for the Site, including but not limited to all post-construction, operation and maintenance, and monitoring Response Costs, and all Response Costs arising in any way in connection with any subsequent groundwater remediation phases that may be required under the ROD.

(*Id.*, Ex. A, ¶ 17).  Paragraph 19(b) of the DuPont Decree provides as follows:

> Only with respect to DuPont, the "Matters Addressed" do not include, and DuPont reserves all of its rights and defenses against any party other than a Settling Defendant or the State with regard to:

---

[1]As a result of these five consent decrees, all of the State's claims related to the cleanup of the Site were resolved.

[2]Occidental and the United States are also parties to the Dupont Decree.

. . .
> (b) any claim by a person not a party to this Consent Decree for any Response Costs or other relief for the release of Hazardous Substances emanating or arising from the adjacent or nearby DuPont Facility and migrating onto or about the Site and/or Olin property . . . .

(*Id.*, ¶ 19(b)).  The DuPont Decree also contains the following provision for "Contribution Protection:"

> The Parties agree and by entering into this Consent Decree the Court finds that [DuPont, Occidental, and the United States] are entitled to the full extent of protection from contribution actions or claims provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and/or any other applicable federal or state law, for the Matters Addressed by this Consent Decree.

(*Id.*, ¶ 21).  As mentioned, this Consent Decree was approved by the court on October 8, 1997, and entered as an order (Item 657) in No. 83-CV-1401.

Under the Solvent Decree, Solvent agreed to remediate the contamination discovered at the 3163 Buffalo Avenue Site, as well as the contamination located on the adjacent Olin Hot Spot, while reserving its right to seek recovery of any response costs incurred for the release of hazardous substances or other contamination emanating or arising from adjacent facilities (including the DuPont Facility) and migrating onto the 3163 Buffalo Avenue Site or the Olin Hot Spot (Item 69, Ex. B).  Paragraph 46(b) of the Solvent Decree provided that the "Matters Addressed" by the Decree did not include, and Solvent reserved all of its rights against any party other than the State with regard to:

> . . . any response costs or other relief for the release of hazardous substances or other contamination emanating or arising from adjacent or nearby facilities, including the DuPont facility, and migrating onto or about the Site and/or Olin property . . . .

(*Id.*, ¶ 46(b)).  The Solvent Decree was approved by this court on October 8, 1997, and entered as an order (Item 655) in No. 83-CV-1401.

-6-

At about the same time, Solvent and DuPont entered a separate "side agreement" under which DuPont agreed not to pursue any third-party contribution claims related to the release of hazardous substances at and from the Site.[3]  Specifically, Paragraph 1 of the agreement provides as follows:

> . . . DuPont . . . will not assert any demands for contribution, indemnification or reimbursement, or claims, counter claims or cross claims, nor bring any action or file any litigation against the third parties for reimbursement, contribution or indemnification related to any of the "Matters Addressed" in the Consent Decrees to be separately executed by the parties with New York State in the Action (the "Consent Decrees").

(Item 69, Ex. F, ¶ 1).  Paragraph 4 of the side agreement provides:

> Except for those claims which comprise matters not addressed in the Consent Decrees or matters for which the parties have reserved their rights in the Consent Decrees Solvent . . . agree[s] to release any and all claims against DuPont related to the Site.

(*Id.*, ¶ 4).  This side agreement was required by Solvent as a condition to entering the Solvent Decree in order to allow it to pursue its remaining contribution claims against non-settling third parties without the threat of contribution claims by DuPont against those same parties (*id.*; *see* Item 69, Ex. R (Falick Dep.), at 45).

Solvent commenced this action (referred to by the parties as "Action II") in June 2001 alleging that DuPont is liable for a portion of the response costs incurred at the Site as a result of the migration of hazardous substances–particularly, chlorinated aliphatic compounds[4]–from the DuPont Facility to the Site.  In both its second affirmative defense and its first counterclaim in this action, DuPont asserts that the contribution protection

---

[3]Solvent also entered a similar side agreement with the Mader Capital Corp.

[4]The chlorinated aliphatic compounds include trichloroethene ("TCE"), tetrachloroethene ("PCE"), vinyl chloride, dichloroethylene ("DCE"), chloroform, and 1,1,2,2-tetrachloroethane (Item 73, Ex.6 (Hughes Aff.), ¶ 8; Ex. 7).

contained in the DuPont Decree bars Solvent from seeking contribution from DuPont for any response costs incurred in performing the remedial action required by the ROD to address the release of hazardous substances at the 3163 Buffalo Avenue Site or the Olin Hot Spot (Item 43, pp. 6-8, 11-13).  In its third affirmative defense, DuPont asserts that the response costs at the Site are being incurred as the result of the release of benzenes and chlorinated benzenes associated with Solvent's operation of the Site, not as the result of release or migration of any unrelated organic compounds (*i.e.*, chlorinated aliphatics) from the adjacent DuPont Facility (*id.* at pp. 8-9).  DuPont acknowledges that Solvent's contribution claims would not be barred to the extent Solvent can demonstrate that the release of hazardous substances at and from the DuPont Facility has caused Solvent to incur necessary response costs.

In July 2001, Solvent moved to strike DuPont's second affirmative defense and first counterclaim, and DuPont cross-moved for summary judgment dismissing the contribution claim.  In a decision and order dated December 24, 2002, this court denied these motions, finding disputed questions of both fact and law with respect to the scope of contribution protection afforded by the DuPont Decree, as well as "some ambiguity about the scope of contribution that plaintiffs are seeking . . . ," to be clarified by further litigation.  *Solvent Chemical Company, ICC Industries, Inc. v. E.I. DuPont de Nemours & Company*, 242 F.Supp.2d 196, 213 (W.D.N.Y. 2002).  The court also found genuine issues of fact with respect to the respective rights of the parties pursuant to paragraphs 17, 19(b), and 21 of the DuPont Decree.  *Id.* at 216.

DuPont once again moves for partial summary judgment on its first counterclaim and/or second affirmative defense seeking the following determinations by the court as a matter of law:

A.  Because no hazardous substances generated at or related to the DuPont Facility have been disposed of at the 3163 Buffalo Avenue Site or the Olin Hot Spot, DuPont is not a CERCLA liable party with regard to the Site.

B.  If DuPont is a CERCLA responsible party with regard to the DuPont Facility, it would be liable for all necessary response costs caused by the offsite migration of hazardous substances released at or from the DuPont Facility.

C.  Solvent has no basis for a CERCLA Section 113(f)(1) contribution claim against DuPont with regard to the Site, but Solvent is entitled to assert a CERCLA Section 107(a) cost recovery claim against DuPont with regard to any necessary costs of response that Solvent has been caused to incur because of the release of hazardous substances at the DuPont Facility and the groundwater migration of those substances onto the Site.

D.  Solvent is a CERCLA Section 107(a)(2) liable party with regard to the Site by virtue of its status as a former owner and operator at the time hazardous substances were disposed of at the Site, and necessary response costs have been caused by a release of hazardous substances at and from the Site.

DuPont contends that following these determinations, the litigation will be more narrowly focused on Solvent's attempt to prove that it was caused to incur necessary response costs as a result of the release of hazardous substances at and from the DuPont Facility

and the migration of those substances onto the Site and, if so, the nature and amount of such costs.

In response, Solvent contends that the law of the case, as determined by this court in its December 24, 2002 decision and order, holds that neither CERCLA nor the DuPont Decree requires Solvent to demonstrate that hazardous substances migrating from the DuPont Facility have specifically caused Solvent to incur response costs distinct and separate from those incurred in implementing the remedy selected in the ROD.  To the contrary, according to Solvent, the law requires that in the event hazardous substances like those disposed of at the DuPont Facility have come to be located at the Site, DuPont is liable for its full equitable share (to be determined in the apportionment stage of the proceedings) of the total response costs incurred in remediating all of the hazardous substances that have come to be located at the Site.

## **DISCUSSION**

### I.    **Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Under the rule, the burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).  When perusing the record to determine whether a rational fact-finder would find for the nonmoving party, "a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party."  *Sorlucco v. New York City Police Department*, 888 F.2d 4, 6 (2d Cir. 1989).

The rulings sought by DuPont in this renewed motion are addressed by the court in summary fashion, as  follows:

1.      DuPont's liability for contribution under CERCLA.

2.      If liable for CERCLA contribution, the scope of DuPont's contribution protection set forth in the DuPont Decree.[5]

## II.    DuPont's CERCLA Liability

DuPont once again seeks summary judgment in its favor on Solvent's claim for contribution under CERCLA.  DuPont contends that it cannot be found to be a CERCLA responsible party severally liable for a share of all of the response costs caused by releases at the 3163 Buffalo Avenue Site or the Olin Hot Spot, because Solvent cannot show that hazardous substances generated at or related to the DuPont Facility have been disposed of at the Solvent Site.  The essence of the argument is that, to the extent DuPont

---

[5] In its supporting memorandum of law, DuPont asserts the following additional grounds:

1.      CERCLA Section 113(f)(2) provides a statutory bar to contribution claims.
2.      The consent decrees should be interpreted according to principles of contract law.
3.      The scope of contribution protection is expressly set forth in the DuPont Decree.

Because they are all related, the court will address these grounds in conjunction with DuPont's request for judicial interpretation as to the scope of contribution contained in the DuPont Decree.

might be found responsible for the cost of remediating any chlorinated aliphatics found at the Solvent Site,[6] the release of chlorinated aliphatics occurred at the DuPont Facility, and there has been no disposal or release of any DuPont hazardous substances into the environment at the Solvent Site.

These very same contentions were advanced by DuPont in support of its previous motion for dismissal of the contribution claim (*see generally* Items 9 & 24), were thoroughly considered by the court in its December 24, 2002 ruling (*see Solvent Chemical*, 242 F.Supp.2d at 207-11), and were rejected.  As discussed at some length in that ruling, Solvent brought this action seeking contribution from DuPont, pursuant to CERCLA Section 113, for DuPont's share of the response costs incurred in implementing the remedy for the 3163 Buffalo Avenue Site and the Olin Hot Spot as the result of the migration of hazardous substances from the DuPont Facility.  DuPont moved for summary judgment dismissing this claim, arguing that Solvent had failed to allege a causal relationship between the response costs it had incurred and a release from the DuPont Facility, and that language contained in the DuPont Decree expressly excluded any claims alleging DuPont's liability for costs incurred in responding to a release of hazardous substances from the DuPont Facility, which is exactly what Solvent has alleged as the source of DuPont's contribution liability here.   In rejecting DuPont's arguments, the court determined that Solvent had sufficiently stated a claim for contribution under the CERCLA statute, and that nothing in the DuPont Decree or CERCLA jurisprudence shielded DuPont

---

[6]DuPont acknowledges that it would be liable for any necessary response costs caused by releases of chlorinated aliphatics at the DuPont Facility, including any necessary response costs caused by the offsite migration of those substances (*see, e.g.*, Item 76, p. 13 n. 19).

from contribution liability for the migration of hazardous substances from the DuPont Facility to the 3163 Buffalo Avenue Site or the Olin Hot Spot.  *See Solvent Chemical Company*, 242 F.Supp.2d at 207-11, 216.

DuPont now restates its argument for dismissal of the contribution claim contending that, while the release of hazardous substances at the DuPont Facility and the migration of any such substances to the Solvent Site might subject DuPont to CERCLA liability under Section 107 with respect to the DuPont Facility, it does not make DuPont a liable party under CERCLA Section 113 with respect to the Solvent Site.  According to DuPont, if hazardous substances were leaked or spilled at the DuPont Facility and thereafter migrated in the groundwater to the Solvent Site, the "disposal" or "release" of those substances occurred at the DuPont Facility, not at the Solvent Site.  Thus, it is argued, the actions undertaken by Solvent for the purpose of remediating hazardous substances migrating from the DuPont Facility could give rise to a cost recovery claim under CERCLA Section 107–which Solvent has admitted would be barred by the DuPont Decree–but not a contribution claim under CERCLA Section 113.  According to DuPont, since the Second Circuit has determined that passive migration does not constitute disposal for the purpose of imposing CERCLA liability (citing *Niagara Mohawk Power Corp. v. Jones Chemical, Inc.*, 315 F.3d 171 (2d Cir. 2003), and *ABB Industrial Systems, Inc. v. Prime Technology, Inc.*, 120 F.3d 351 (2d Cir. 1997)), Solvent cannot rely on the migration of hazardous substances released at the DuPont Facility to establish the required disposal of DuPont hazardous substances at the Solvent Property.

Again, these are the very same contentions raised by DuPont in support of its previous motion.  The court found Solvent's allegations "that there was a release or

threatened release of hazardous substances at the DuPont Facility, that those substances have come to be located on the Solvent Site and the Olin Hot Spot, and that Solvent has incurred response costs" sufficient to plead a *prima facie* case of CERCLA contribution liability against DuPont. *Solvent Chemical Company*, 242 F. Supp.2d at 209. The court specifically rejected the argument that no CERCLA liability may be imposed on DuPont absent a showing by Solvent that a release from the DuPont Facility had caused Solvent to incur response costs at the Solvent Site. According to the court, the issue as to how the hazardous substances in question have come to be located at any given site is simply not a relevant consideration in determining liability under CERCLA's strict liability scheme. The court explained that while the CERCLA plaintiff need not establish a direct causal link between a specific defendant's waste and the response costs incurred, the issue of causation may become a relevant consideration at the apportionment stage of the proceedings. *Id.* at 209-10 (citing *United States v. Alcan*, 990 F.2d 711 (2d Cir. 1993), and *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992)).

The court found that it would be premature to dismiss the complaint in the absence of further discovery and fact-finding with respect to whether migration of hazardous substances from DuPont's Facility caused Solvent to incur response costs at the Solvent Site. *Id.* at 210. DuPont has come forward with no additional evidence[7] or argument to

---

[7]DuPont cites the deposition testimony of Paul Hughes (Item 69, Ex. J), the project manager for the environmental engineering firm hired by Solvent to design and implement the remedial action at the Site, suggesting that the concentrations of chlorinated aliphatics allegedly attributable to DuPont's operations at its adjacent facility were discovered in the C-zone groundwater at the Solvent Site and the Hot Spot. According to DuPont, the pumping of C-zone groundwater is beyond the scope of the remedy required by the Solvent Decree to establish hydraulic control in the A and B groundwater zones. DuPont has expanded upon this argument, and Solvent has responded, in the parties' exchange of supplemental submissions engendered by the court's hypothetical, posed at oral argument, involving the cleanup of a farmhouse kitchen floor (*see especially* Items 83 & 84). Rather than supporting DuPont's argument for dismissal of the contribution claim, these submissions highlight the nature of the factual disputes

convince the court that dismissal of the contribution claim would be appropriate at this juncture, prior to an apportionment or divisibility inquiry.  Instead, it is apparent that DuPont has merely reformulated its arguments to reiterate grounds which the court has already thoroughly considered and explicitly rejected.

Accordingly, DuPont has once again failed to meet its burden of demonstrating the absence of a genuine issue of material fact with respect to its liability under CERCLA for contribution based on an equitable share of the remediation costs at the Site attributable to the migration of hazardous substances from the DuPont Facility.

### III.     The Scope of Contribution Protection

By way of this motion, DuPont also seeks certain specific determinations with respect to the scope of contribution protection set forth in the DuPont Decree.  CERCLA Section 113(f)(2) provides protection from contribution claims as follows:  "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2).  The approval of a CERCLA consent decree results in contribution protection to the settling party, and it affects the rights of potentially responsible parties who are not signatories to the decree.  The scope of the matters addressed in the decree determines the extent of the contribution protection granted.  *United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 515 (1st Cir. 1996); *Niagara*

---

remaining with respect to the determination of responsibility of the parties for their proportionate equitable share of the harm caused at the Site, pursuant to CERCLA Section 113(f)(1).

*Mohawk Power Corp. v. Consolidated Rail Corp.*, 291 F. Supp.2d 105, 120 (N.D.N.Y. 2003).

According to DuPont, the "Matters Addressed" in paragraph 17, and the exclusion from "Matters Addressed" set forth in paragraph 19(b), read in conjunction with the "Contribution Protection" set forth in paragraph 21, bar Solvent from seeking to recover from DuPont for any "Response Costs"[8] incurred by Solvent either as a consequence of the release of hazardous substances (namely, benzenes and chlorinated benzenes) at the 3163 Buffalo Avenue property, or as a consequence of the migration of those substances from the 3163 Buffalo Avenue property or the Olin Hot Spot–including response costs incurred for the implementation of the remedial program set forth in the ROD.  DuPont contends that the exclusion contained in paragraph 19(b) only relates to response costs caused by the release of hazardous substances at the DuPont Facility and the migration of such substances onto the Site–*i.e.*, incremental costs separate and distinct from the costs associated with implementation of the remedy set forth in the ROD.

These arguments were also addressed by the court in conjunction with its previous ruling on Solvent's motion to strike DuPont's Second Affirmative Defense and DuPont's cross-motion for summary judgment on its counterclaim.  *Solvent Chemical Company*, 242 F. Supp.2d at 212-14.  As mentioned above, the court found disputed questions of both

---

[8]"Response Costs" are defined in paragraph 2(n) of the DuPont Decree as follows:

"Response Costs" means all costs incurred or to be incurred, no matter by whom incurred, in connection with responding to the release or threatened release of any Hazardous Substance(s) at or from the Site, including but not limited to past and future costs of: investigation; removal and/or remedial action and/or response activities; post-closure activities; monitoring; enforcement (including but not limited to attorney's fees); oversight; operation and maintenance; and cost-overruns . . . .

(Item 69, Ex. 1, p. 7).

fact and law with respect to the scope of contribution protection afforded by the DuPont Decree, as well as some ambiguity about the nature of the contribution that Solvent is seeking, to be clarified by further litigation. *Id.* at 213. In denying both motions, the court noted that nothing in the DuPont Decree or in the cases interpreting the CERCLA statute shielded DuPont from liability for contribution with respect to response costs incurred as the result of the migration of hazardous substances from the DuPont facility to the Solvent facility. *Id.* at 216.

Unfortunately, litigation subsequent to the December 24, 2002 ruling has done little to clarify the issues. As outlined by DuPont, the language in paragraph 17 clearly provides it with protection from contribution for response costs incurred as a result of the release or threatened release of hazardous substances at or from the Site. In addition, the payment of $216,250.00 clearly represents DuPont's negotiated share of both past and future response costs incurred for the implementation of the remedial program set forth in the ROD.

According to DuPont, the State has made it clear in the separate Consent Decrees negotiated with regard to the separate enforcement actions involving the DuPont Facility, the Olin Facility, and the Solvent Site that it will look to DuPont to address any necessary remedial actions related to the release of hazardous substances at and from the DuPont Facility, and that it is looking to Solvent to perform the remedial actions deemed necessary to address the release of hazardous substances at and from the Solvent Site. The ROD confirms that the groundwater remedy selected for the Solvent Site is intended to address the benzene and chlorinated benzene contamination associated with Solvent's prior operations at the Site, most prevalent in the overburden (A-zone) and the shallow bedrock

(B-zone) groundwater at the Site.  While benzene and chlorinated benzenes have been detected in the groundwater in the C-zone, the remedial actions selected in the ROD are directed at preventing migration of benzene and chlorinated benzenes from the A and B-zones at the Site, and do not require any pumping or other containment or remediation of the groundwater in the C-zone or below.

Solvent responds that the clear language in paragraph 19(b) of the DuPont Decree precludes DuPont from asserting protection against CERCLA contribution liability for response costs related to the release of hazardous substances migrating onto the Solvent Site from the adjacent DuPont Facility.  Solvent contends that significant levels of chlorinated aliphatics (which are associated with operations at the DuPont Facility) have been detected in the pumped groundwater at the Solvent Site.  Due to the presence of these substances, and the absence of contribution protection against recovery of costs related to remediation of substances that have migrated from the DuPont Facility, Solvent argues that DuPont should be assessed a substantial equitable share of all of the costs that have been and will be incurred to design, install and operate the Hot Spot and B-zone pump and treat system required in the ROD.

Once again, based on the arguments put forth in the parties' respective submissions, the court is constrained to find that each party is partially correct.  As this court has previously held, "Solvent is correct that nothing in the DuPont Consent Decree or CERCLA jurisprudence shields DuPont from liability for the migration of hazardous substances from the DuPont facility to the Solvent facility."  *Solvent Chemical Company*, 242 F. Supp.2d at 216.  Solvent is also correct that it is not required at this stage of the

proceedings to prove that hazardous substances from the DuPont plant specifically caused Solvent to incur response costs that it would not have otherwise incurred.  *Id.*

On the other hand, DuPont is correct that it has paid a substantial amount to the State to resolve its liability for both past and future response costs incurred for the implementation of the remedial program set forth in the ROD, and that Solvent's interpretation of the DuPont Decree may result in duplicative payments of those same costs.

Yet, the conclusion is inescapable that the language of paragraph 19(b) clearly and unambiguously excludes from the matters addressed by the DuPont Decree claims for "<u>any</u> Response Costs" incurred for remediation of hazardous substances migrating onto the Solvent Site from the adjacent DuPont Facility.  In other words, the migration of DuPont contamination (*i.e.*, chlorinated aliphatics) from the DuPont property to the Solvent property is specifically a matter <u>not</u> addressed by the DuPont Decree, and the cost of responding to contamination caused by that migration remains a matter not settled by any of the parties–including DuPont.  If DuPont had intended to limit the exclusion of paragraph 19(b) to costs separate and distinct from any costs associated with implementation of the groundwater pump and treat system required in the ROD, it could have done so in much clearer language.  Reading all of the relevant provisions in the consent decrees so as "to give effect to every word and expression contained therein . . . ," *Levine v. 860 West Tower, Inc.*, 1999 WL 185270, at *3-*4 (S.D.N.Y. 1999) (quoting *Riggs v. Riggs*, 205 A.D.2d 864, 865 (3d Dep't 1994)), it cannot be disputed that the parties intended to exclude from the "Matters Addressed" by the DuPont Decree any claim for contribution associated with contamination caused by hazardous substances migrating from the

DuPont Facility to the Solvent Site.  The extent to which any hazardous substances associated with operations at the DuPont Facility have been detected in the pumped groundwater at the Solvent Site, and the extent to which the presence of those substances have caused (or will cause) Solvent to incur the costs of designing, installing, and operating the Hot Spot and B-zone pump and treat system required in the ROD, present factual issues inappropriate for resolution by the court on summary judgment.

Accordingly, the court finds that DuPont can be held liable as a responsible party with respect to the Solvent Site in the event it is established that hazardous substances disposed of at the DuPont Facility have migrated to the Solvent Site and have caused Solvent to incur response costs.  The court also finds that, in that event, DuPont will be responsible for its full equitable share of Solvent's total response costs, in an amount to be determined during the apportionment stage of the case.[9]

---

[9]In recent correspondence (*see* Items 90 & 91), counsel for DuPont advised the court of his intent to supplement the record with respect to certain issues addressed by the Supreme Court in *Cooper Industries, Inc. v. Aviall Services, Inc.*, ___U.S.___, 125 S.Ct. 577 (2004), as interpreted in *W.R. Grace & Co.–Conn. v. Zotos International, Inc.*, 2005 WL 1076117 (W.D.N.Y. May 3, 2005) (Skretny, J.).  In *Cooper Industries*, the Supreme Court held that a private party which has not itself been sued in an administrative or judicial cost recovery action under CERCLA may not obtain contribution from other potentially responsible parties ("PRPs") in a CERCLA Section 113(f)(1) action (which authorizes contribution actions against other PRPs "during or following" a civil action under CERCLA Section 106 or 107(a)).  In *W.R. Grace*, Judge Skretny held that, after *Cooper Industries*, where a facility owner has entered a consent decree with the State resolving its liability (prior to suit) for the cost of investigation and remediation of environmental contamination at a site, and then later sues other PRPs for contribution under both state law and CERCLA Section 113(f)(3)(B) (which authorizes contribution actions against other PRPs when the party has resolved its response cost liability in a consent decree or judicially approved settlement), the court must determine whether the consent decree settled the party's CERCLA liability, or only its liability under state law.  In the present case, it is clear that Solvent and DuPont were sued by the State of New York under CERCLA Section 107(a), and the consent decrees which the parties entered with the State specifically addressed the resolution of the parties' CERCLA liabilities.  Accordingly, the holdings of *Cooper Industries* and *W.R. Grace* have no application to this case, and there is no need for supplementation of the record in this regard.

## **CONCLUSION**

For all the reasons set forth above, the court denies DuPont's motion for partial

summary judgment (Item 67).

So ordered.

|                                   |
|-----------------------------------|
| \s\ John T. Curtin                |
| JOHN T. CURTIN                    |
| United States District Judge      |

Dated:    June    27,    2005

p:\opinions\01-425.june2305